IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERNESTO GARCIA,**<br><br>*Plaintiff*,<br><br>*v.*<br><br>**NATIONAL DEBT RELIEF LLC**,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Ernesto Garcia ("Plaintiff Garcia" or "Garcia") brings this Class Action Complaint and Demand for Jury Trial against Defendant National Debt Relief LLC ("Defendant" or "National Debt Relief") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Garcia, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Garcia is a resident of El Paso, Texas.

2. Defendant National Debt Relief is a New York registered company headquartered in New York, New York. Defendant National Debt Relief conducts business throughout this District and throughout the US including in Texas.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed the calls to Plaintiff from here.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.7 billion robocalls were placed in October 2025 alone, at a rate of 120.6 million per day. www.robocallindex.com (last visited November 16, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant National Debt Relief provides debt relief solutions for consumers throughout the US.[3]

15. Defendant National Debt Relief places calls to solicit its debt relief solutions.

16. Defendant National Debt Relief places telemarketing calls to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/national-debt-relief-group/

17. National Debt Relief lacks a sufficient opt-out system to ensure that a consumer who notifies National Debt Relief to stop calling them will be removed from their calling list.

18. National Debt Relief employees have posted about cold calls they had to place to generate business, with one indicating that they were instructed to keep calling people who did not want to work with the Defendant:

> **National Debt Relief**
>
> ★☆☆☆☆ November 7, 2024
>
> **Toxic work environment cold calling**
>
> **Account Executive** New York, NY
>
> Poor management say you will not do cold calling but you are cycling through regurgitated leads that have been called any where from 5-40 times that day, very angry customers when they have said no they do not want the service provided from us but we continue to keep the file open as they would say " Keep working them, they will come around" salary is there but will be affected and taken if you don't meet a certain amount of commission or have clients cancel.

[4]

> **Cons**
>
> The training class started as 30+, and that was down to about 20 after 4 weeks of training. As mentioned, I needed a job at the time, only reason I didn't quit on the spot. We get out of training, and start doing 200 cold calls per day. Some did okay, others struggled out of the gate, probably about 50/50. Their lead routing algorithm gives good leads to the one's making sales, and bad one's to the one's who aren't. Less than a month out of training, I get put on a PIP for 'not performing', as did about half the class. Given 2 weeks to reach a made up goal, was fired after 1 week into PIP, as were many others. 2 months total of my life wasted. I've had 10+ years as a top performer in sales just for some context.

[5]

19. Other employees have complained about the quality of the leads they were given to call by National Debt Relief:

---

[4] https://www.glassdoor.ca/Reviews/Employee-Review-National-Debt-Relief-E707737-RVW100420566.htm

[5] https://www.glassdoor.com/Reviews/Employee-Review-National-Debt-Relief-E707737-RVW100420566.htm

3.0 ★★★☆☆ May 7, 2024

### Sales

Account executive

Current employee, more than 1 year | New York, NY

✕ Recommend ○ CEO approval ○ Business outlook

**Pros**

Remote work, Decent Benefits, and 401k, They do an excellent job serving the client and getting them out of unsecured debt..

**Cons**

working every weekend is tough, the quality of leads inconsistent, low volume of call ins, calling prospects too often it annoys them, favoritism when sharing leads. Recent hires have drastically reduced earning ability [6]

1.0 ★☆☆☆☆ Jun 10, 2025

### RUN AWAY

Account executive

Current employee, more than 1 year

✕ Recommend ✕ CEO approval ✕ Business outlook

**Pros**

only benefit is that you work from home

**Cons**

even as a bridge job this was terrible. you literally get paid 15/h and the lead and comp structure is terrible. they route all the best leads to all their favorite agents who were in office before they went remote leaving you with bad leads that bring down your conversion forcing you take more bad leads since your conversion is low. now as far as the comp structure you get a chargeback every month when the client cancels or misses a payment because the client realizes that NDR doesn't do anything to actually help them. you can spend 1 hour or even longer on the phone signing somebody up and they can literally cancel the next day giving [7]

---

[6] https://www.glassdoor.com/Reviews/National-Debt-Relief-Account-Executive-Reviews-EI_IE707737.0,20_KO21,38_IP4.htm?filter.jobTitleFTS=Account+Executive&filter.iso3Language=eng&filter.employmentStatus=REGULAR&filter.employmentStatus=PART_TIME

[7] https://www.glassdoor.com/Reviews/National-Debt-Relief-Account-Executive-Reviews-EI_IE707737.0,20_KO21,38.htm?filter.jobTitleFTS=Account+Executive&filter.iso3Language=eng&filter.employmentStatus=REGULAR&filter.employmentStatus=PART_TIME

20. Consumers have posted complaints on the Better Business Bureau page for National Debt Relief about unsolicited calls they received, with some complaining about unsolicited calls despite requests for the calls to stop, including:

- "This company makes incessant robo calls every day, a two to three times a day. ***I have ***eatedly requested to be removed from the call list*** via customer *** and "pressing 9" to no avail. I just want the harassment to stop. I have not done any business with them and never plan to do business with them."[8] (emphasis added)
- "***Harassment by contacting me after asking to stop***. I am registered by the do not call list. This occurs daily for approximately 4 months with documentation. The Harassment does not end."[9] (emphasis added)
- "They ***continue to spam call me and despite me asking for them to stop*** they call me every 5min. They use different phone numbers so I cant block them. Please get them to stop calling me…"[10] (emphasis added)
- "Constant calls from different cities multiple times a day. Mostly people with a foreign accent. I want this to stop. ***I have even told them to take my number out of their files***. Then they call from a different number and different city. I'm being harassed by this company."[11] (emphasis added)
- "I do not have debt with this company. I have never consented to calls from this company. I have blocked their number. ***I am on the do not call list. I have submitted a do not call report to their company. I have still continued to receive calls***."[12] (emphasis added)
- "This company, National Debt Relief has somehow gained access to my personal contact information. I had never even heard of this company. ***I never ever contacted them or provided them with any of my personal information - I do not need any debt services***! This crazy company ***has not stopped harassing me for a month now*** - at least 10 emails every day, texts, phone calls. I have blocked them every day multiple times, repeatedly unsubscribed, reported spam, phishing, junk, etc. Nothing I have done will stop this harassment. I see this company has many complaints for doing the same things to others and in fact, there is a class action lawsuit. Others have repeatedly unsubscribed and it's to no avail. Please help me get them to stop this. To be clear: I have never engaged with National Debt Relief in any way - I do not need any type of debt service in my life. This is

---

[8] https://www.bbb.org/us/ny/new-york/profile/debt-relief-services/national-debt-relief-0121-110899/complaints
[9] Id.
[10] https://www.bbb.org/us/ny/new-york/profile/debt-relief-services/national-debt-relief-0121-110899/complaints?page=5
[11] https://www.bbb.org/us/ny/new-york/profile/debt-relief-services/national-debt-relief-0121-110899/complaints?page=8
[12] https://www.bbb.org/us/ny/new-york/profile/debt-relief-services/national-debt-relief-0121-110899/complaints?page=10

pure spam, hacking, harassment by this company. National Debt Relief"[13] (emphasis added)

21. In response to these calls, Plaintiff Garcia brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF GARCIA'S ALLEGATIONS**

22. Plaintiff Garcia is the sole owner and user of his cell phone number ending in 8082.

23. Plaintiff Garcia registered his cell phone number on the DNC on June 22, 2023.

24. Plaintiff Garcia uses his cell phone number for personal use only as one would use a landline telephone number in a home.

25. Plaintiff Garcia uses his cell phone primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household purposes.

26. Plaintiff Garcia's cell phone plan is paid for by Plaintiff himself. It is not reimbursed by a business.

27. Plaintiff Garcia has never had his cell phone number associated with a business.

28. This phone number is not used in any business or marketing materials.

29. On August 9, 2025 at 3:28 PM, Plaintiff Garcia received an unsolicited call to his cell phone from 800-814-4923.

30. The caller display displayed the name National Debt Relief, as it did for most of the subsequent calls:

[13] Id.




31. When Plaintiff Garcia answered this call, an employee identified himself as what sounded like Hanso, with National Debt Relief.

32. Hanso said that he was calling to provide information about Defendant's debt relief services in response to an alleged inquiry regarding debt relief.

33. Plaintiff Garcia told Hanso told he had never inquired about debt relief and asked how his contact information was acquired.

34. Hanso said that there was either an inquiry or an appointment for that time frame on August 9th.

35. Plaintiff Garcia repeated that he had never requested information about debt relief, and the employee simply disconnected the call before Plaintiff could ask not to be called again.

36. On August 10, 2025 at 9:19 AM, Plaintiff Garcia received a 2nd unsolicited call to his cell phone, again from 800-814-4923.

37. When Plaintiff Garcia answered this call, an employee identified himself as Daniel Thompson from National Debt Relief calling about Defendant's debt relief services.

38. Plaintiff Garcia confirmed that Thompson was calling from National Debt Relief.

39. Plaintiff Garcia specifically told Thompson to put his cell phone number on the National Debt Relief do not call list.

40. On August 10, 2025 at 2:20 PM, Plaintiff Garcia received a 3rd unsolicited call to his cell phone, again from 800-814-4923.

41. When Plaintiff Garcia answered this call, the caller identified herself as Maria from National Debt Relief again calling about Defendant's debt relief services.

42. On September 17, 2025 at 3:34 PM, Plaintiff Garcia received a 4th unsolicited call to his cell phone, this time from 785-900-9583.

43. When Plaintiff Garcia answered this call, there was a distinct bleep sound and a pause before a live agent came on the line.

44. An employee identified himself as John with National Debt Relief and said that he was calling about Plaintiff's alleged credit card debt.

45. John then asked if Plaintiff Garcia has any credit card debt.

46. Plaintiff Garcia said that he does, but that he has never inquired about debt relief and asked how John acquired his contact information.

47. Plaintiff Garcia has never done business with National Debt Relief or consented to be called by them.

48. Plaintiff Garcia's attorneys had an employee send a demand for consent email to National Debt Relief on October 30, 2025. No response has been provided by National Debt Relief as of the filing of this complaint.

49. The unauthorized solicitation calls that Plaintiff received from or on behalf of Defendant violated Plaintiff's statutory rights under the TCPA. Plaintiff Garcia is entitled to statutory damages for each violation as provided under 47 U.S.C. § 227(c)(5).

50. Seeking redress for these injuries, Plaintiff Garcia, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

51. Plaintiff Garcia brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant National Debt Relief called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant National Debt Relief called/texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

52. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Garcia anticipates the need to amend the Class definitions following appropriate discovery.

53. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

54. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant National Debt Relief placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether the calls constitute a violation of the TCPA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

55. **Adequate Representation**: Plaintiff Garcia will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Garcia has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Garcia and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Garcia nor his counsel have any interest adverse to the Classes.

56. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Garcia. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## <u>FIRST CAUSE OF ACTION</u>
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Garcia and the Do Not Call Registry Class)**

57. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

58. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

59. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

60. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Garcia and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

61. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Garcia and the Do Not Call Registry Class received more than one call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

62. As a result of Defendant's conduct as alleged herein, Plaintiff Garcia and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

63. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**<u>SECOND CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Garcia and the Internal Do Not Call Class)**

64. Plaintiff repeats and realleges paragraphs 1-56 of this Complaint and incorporates them by reference herein.

65. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf

> the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

66. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

67. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

68. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up

to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Garcia requests a jury trial.

**ERNESTO GARCIA**, individually and on behalf of all others similarly situated,

DATED this 10th day of December, 2025.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
(877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com

KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Pro Hac Vice motion forthcoming*

*Attorneys for Plaintiff and the putative Classes*